ROBINSON, J., dissenting.
¶ 24. The majority's conclusion does not follow from its premise. I don't take issue with the majority's legal analysis that the deadliness of an implement (or weapon) should be assessed with reference to the way it is used or threatened to be used. But even within the majority's own framework, I cannot agree that defendant threatened to use the otherwise nondeadly tool at issue here in a way that converted it to a deadly weapon. The majority's holding expands the reach of the assault-with-a-deadly-weapon statute beyond any reasonable bounds.
¶ 25. I agree that an implement that may not otherwise generally be viewed as a deadly weapon can be considered a deadly weapon under 13 V.S.A. §§ 1021(3) and 1043(a)(2) based on the way that it is used or threatened to be used. So, for example, a threat to smother a family member with a pillow may constitute first degree aggravated domestic assault under § 1043(a)(2) even if the actor does not carry out the threatened action. But a threat to whack someone's backside with that same pillow could not. And I agree that whether the use or threatened use of an implement is "known to be capable of producing death or serious bodily injury," § 1021(a)(3), is evaluated objectively. See ante, ¶ 16. So far, so good.
¶ 26. But I cannot fathom how this legal framework supports the conclusion that the implement at issue in this case was a deadly weapon. A picture speaks a thousand words.
*72 ¶ 27. Used in the manner threatened here, this tool is not a deadly weapon. Although the tool contains a cutting blade, the blade is protected such that it cannot actually cut anything thicker than the side of a box. In that respect, it is like a small, plastic pencil sharpener, manual can opener, or stapler. It is capable of cutting (or in the case of a stapler, puncturing) something, but is engineered so that it would be extremely difficult to use to cut (or puncture) anything other than the specific object it was designed to cut or puncture. The blade in this case faces opposite the tip of the implement. You can ram this tool into someone's abdomen, but it won't penetrate their skin.
¶ 28. The State's own description in oral argument of how this tool could be used as a deadly weapon supports my view. The State posited that, because the child in this case is small, it would be possible (perhaps while she sleeps) to slice her ear, presumably by inserting her ear into the narrow channel designed for the box side.[2] Had defendant threatened to use this tool to slice the child's earlobe off in her sleep, the State might be able to make a case that he threatened to use the implement as a deadly weapon. But he didn't. He poked it into her belly-a threatened use that could not bring about the serious bodily harm that might otherwise transform this everyday household tool into a deadly weapon triggering heightened legal penalties. The threat in this case is akin to the threat to use a pillow to swat someone's backside.
¶ 29. If we are to conclude that defendant's threat to harm the child with an implement that could conceivably cause serious injury-even if unrelated to the threatened use-supports a finding that the implement is a deadly weapon, then any use or threat to a family member that involves any object would be aggravated domestic assault with a deadly weapon. A threat to hit a child's backside with a pillow would qualify because the pillow could also be used to smother the child. Poking a sibling in the back with a small plastic pencil sharpener would qualify because you could stick someone's finger in the slot and rotate the plastic casing. And threatening to poke a spouse in the belly with a manual can opener would qualify because you could close the cutting wheel on the tip of someone's finger and then turn the cutting mechanism. The majority has ignored the requirement of some connection between the actual or threatened use of an implement and its capacity to *73 cause serious bodily injury. In doing so, it has stretched the definition of deadly weapon in § 1021(a)(3) to cover far more behavior than I believe the Legislature intended, particularly given the dramatically higher maximum penalties imposed for the use of a deadly weapon in connection with an assault. Compare 13 V.S.A. § 1023(b) (establishing one-year prison sentence for simple assault), with ibr.US_Case_Law.Schema.Case_Body:v1">id. § 1024(b) (providing for fifteen-year prison sentence for assault with a deadly weapon), and ibr.US_Case_Law.Schema.Case_Body:v1">id. § 1042 (providing for eighteen-month imprisonment for domestic assault), with id. § 1043(b) (establishing fifteen-year imprisonment for domestic assault with a deadly weapon).
¶ 30. The evidence in this case could support a conviction of defendant for any number of crimes. Domestic assault with a deadly weapon is not one of them. For these reasons, I dissent.
¶ 31. I am authorized to state that Justice Skoglund joins this dissent.

The State also suggested that the tool could be used to slice a child's nostril, although it is hard to imagine how the full thickness of a nostril could fit in the narrow channel and then slide down the channel the length required to actually enable the blade to contact the nostril flesh.